UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
PATRICK S. OLCHOVY & DONNA OLCHOVY,

                       Plaintiffs,                    REPORT AND
                                                           RECOMMENDATION
   -against-

                                                            CV 11-1733 (ADS)(ETB)

MICHELIN NORTH AMERICA, INC., and
MICHELIN CORPORATION

                       Defendants.
----------------------------------------------------------------------X

TO THE HONORABLE ARTHUR D. SPATT, UNITED STATES DISTRICT JUDGE:

      Plaintiffs filed this action in Suffolk County Supreme Court on December 23, 2010. The Complaint alleges that defendants are successor corporations to the B.F. Goodrich Company/Uniroyal Goodrich ("BFG") and that they have violated a 1994 settlement agreement between plaintiffs and BFG which required BFG and its successors to pay for family medical coverage for plaintiffs for as long as Patrick Olchovy was considered a disabled employee. (See Notice of Removal, Exh. A ("Complaint") ¶¶ 2-12). On April 8, 2011, defendants removed the action to the United States District Court for the Eastern District of New York, asserting that the action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.[1]

      At the initial pretrial conference, this Court ordered defendants to show cause why this action should not be remanded to state court because it is based not on ERISA, but on the 1994 settlement agreement. The issue has now been fully briefed. For the reasons that follow, I recommend that the action be remanded to the Suffolk County Supreme Court.

---

[1] Neither party asserts that the Court has diversity jurisdiction over this case. (See Notice of Removal at 3; Complaint at 2).

BACKGROUND

According to the Complaint, plaintiffs previously commenced a tort action in state court involving personal injury to Patrick Olchovy during the course of his employment with BFG. (See Complaint ¶¶ 4-6). The case settled on April 21, 1994. (Id. ¶ 7). As part of the settlement, BFG allegedly "agreed that the family medical coverage covering plaintiff would remain in effect as long as plaintiff was considered a disabled employee" of BFG. (Id.). Plaintiff asserts that he is permanently disabled. (Id. ¶ 8). BFG allegedly paid for family medical coverage until the end of December 2007, at which time plaintiffs' insurance plan was merged into the Michelin Retiree Medical and Prescription Drug Plan (the "Plan").[2] (Id. ¶ 10). Thereafter, defendants "failed to comply with the . . . settlement agreement . . . [by] requiring that plaintiff[s] pay a premium for [their] medical coverage." (Id. ¶ 11). Plaintiffs seek a declaration that they are not required to contribute to the cost of the coverage. (Id. at 5).

Defendants submitted the administrative record of plaintiff Patrick Olchovy's case before the Michelin Pension and Benefits Appeals Board. The administrative record includes the transcript of the proceeding in plaintiffs' prior state court personal injury action where the settlement agreement was examined on the record and thereafter ordered by the court. (See Certification of Eric Stuart ("Stuart Cert."), Exh. A at 121).[3] Pursuant to the settlement plaintiffs were awarded $1

---

[2]Defendants assert that Michelin North America purchased a portion of BFG's assets, including the business unit in which Patrick Olchovy worked, prior to April 1994. (Defendants' Response to the Court's Show Cause Order as to the Basis for Federal Jurisdiction ("Defendants' Response") at 1 n.1). The date of Michelin's purchase of these assets is not material to the Court's resolution of the jurisdictional issue.

[3]The Court will identify the pages of the exhibits to the Stuart Certification by the Bates numbers stamped on the lower right corner of each page, omitting the identifier "MICHELIN."

million to settle Patrick Olchovy's personal injury claim and Donna Olchovy's claim for loss of consortium, and the insurance company that had been paying Patrick Olchovy's workers' compensation claim waived its $215,000 compensation lien. (See id., Exh. A at 124-28, 143-44). Regarding the award of continuing health insurance that is at the heart of this matter, the following colloquies occurred on the record:

> [Plaintiffs' Counsel]: Presently, as a disabled employee of the B.F. Goodrich Company, do you have any kind of medical coverage through them, presently?
>
> MR. OLCHOVY: Yes, I do.
>
> [Plaintiffs' Counsel]: Mrs. Olchovy?
>
> MRS. OLCHOVY: Yes.
>
> [Plaintiffs' Counsel]: Is that family coverage of some kind?
>
> MR. OLCHOVY: Yes, it is.
>
> [Plaintiffs' Counsel]: Would you tell us what the name of the company through B.F. Goodrich that you are receiving medical coverage?
>
> MR. OLCHOVY: It's Blue Cross-Blue Shield of Alabama.
>
> . . . .
>
> [Plaintiffs' Counsel]: Have you been receiving medical coverage through that company since 1983 for all medical problems unrelated to your back?
>
> MR. OLCHOVY: Yes, I have.
>
> . . . .
>
> [Plaintiffs' Counsel]: Now do you understand tha also as a condition

of the settlement . . . that coverage will remain in effect as long as you are considered to be a disabled employee of B.F. Goodrich Company. Do you understand that?

MR. OLCHOVY: Yes.

[Plaintiffs' Counsel]: Mrs. Olchovy?

MRS. OLCHOVY: Yes.

. . . .

[Plaintiffs' Counsel]: You understand this coverage is family coverage and will continue as long as you are considered to be a disabled employee of the B.F. Goodrich Company?

MR. OLCHOVY: Yes, I do.

. . . .

[Defendants' Counsel]: In any event, the long term, the decision as to whether or not you are to remain disabled under the terms of that policy is made by the carrier . . . . That's not related in any way to B.F. Goodrich. So that coverage will terminate at such time as you are found by them to be no longer disabled.

MR. OLCHOVY: Yes, I understand that.

[Defendants' Counsel]: As long as they find you disabled pursuant to the policy, the family coverage for any disability or injury not work related will be covered by them.

. . . .

[Plaintiffs' Counsel]: Either, if a doctor examines you and they, [the insurer], in their determination of disability finds you to be no longer disabled, they can discontinue the coverage.

(Id.. Exh. A at 129-30, 131-32, 133). Later, the stipulation was read into the record. It states, in relevant part, "That the medical coverage that Mr. and Mrs. Olchovy have as family coverage that

is presently being afforded to them by B.F. Goodrich Uniroyal will continue under the terms and conditions as set forth in the questioning of Mr. and Mrs. Olchovy . . . ." (Id., Exh. A at 144).

The documents further indicate that Patrick Olchovy "was provided company[-]paid healthcare from the date of his injury on a BFG Medical Plan until 1-1-08 when his plan was terminated, and he was moved to the Michelin Retiree Medical . . . . At that time, he was charged $228/mo to cover himself and his spouse." (Id., Exh. A at 13). There is no dispute that plaintiff Patrick Olchovy remains disabled. Plaintiffs challenged the company's position that he was required to pay for the insurance, citing the 1994 settlement agreement. (Id., Exh. A at 13). On December 5, 2008, the Pension and Benefits Appeals Board denied plaintiffs' request to be reinstated to his previous plan, asserting that "although the 1994 court document did state that the family medical plan would be continued, it did not state that the same plan and the same premium would be continued for life." (Id., Exh. A at 10).

## DISCUSSION

A.  Governing Law

A defendant may remove from state to federal court "any civil action . . . of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Courts must "construe the removal statutes narrowly, resolving any doubts against removability." Lupo v. HumanAffairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994). The party defending removal has the burden of establishing the claimed federal jurisdiction. Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011).

"Normally, a defense that plaintiff's claims are preempted by federal law will not suffice to

confer federal question jurisdiction, which must be determined by reference to the allegations that appear on the face of a well-pleaded complaint." Marcella v. Capital Physician's Health Plan, 293 F.3d 42, 45 (2d Cir. 2002) (internal quotation marks omitted). However, an exception to this rule allows even an action alleging only state law claims to be removed "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003). The Supreme Court has held that "the ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule." Aetna Health Inc. v. Davila, 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (internal quotation marks omitted).

ERISA's "civil enforcement mechanism," set out in section 502(a)(1)(B) of the statute, provides that a participant or beneficiary of a plan governed by ERISA may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A claim is completely pre-empted by ERISA if it meets both prongs of a two part test: It must be brought by an individual who "'at some point could have brought his claim under . . . § 502(a)(1)(B)'" and it must be brought "under circumstances in which 'there is no other independent legal duty that is implicated by a defendant's actions.'" Montefiore, 642 F.3d at 328 (quoting Davila, 542 U.S. at 210). The first prong of the test can, itself, be divided into two prongs, evaluating, first, "whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B); and, second, . . . whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." Montefiore, 642 F.3d at 328 (citing Marin

Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 948 (9th Cir. 2009)).

B.  Plaintiffs' Claim is not Pre-Empted by ERISA

   1.  Plaintiffs' Claim Could not have been Brought Under § 502(a)(1)(B)

As noted above, Davila's first prong asks whether the plaintiff is the type of party entitled to bring an action under ERISA's civil enforcement provision and, then, whether the claim asserted "can be construed as a colorable claim for benefits" under the provision. Montefiore, 642 F.3d at 328. Neither party disputes that the plaintiffs are participants or beneficiaries of an ERISA-governed plan. Thus, the first part of the Davila's first prong is met.

However, defendants have not shown that the specific claim asserted is colorably a claim for benefits. The Second Circuit addressed this prong in Montefiore. Although the facts of that case are dissimilar to those presented here, the court's discussion of how to determine whether a claim could have been brought under § 502(a)(1)(B) is illuminating. Montefiore Medical Center is a health care provider that provided services to beneficiaries of the Local 272 Welfare Fund, an employee benefit plan governed by ERISA. Id. at 325. When beneficiaries visited an "in-network" health care provider, the beneficiary paid either nothing or a small co-payment and the Welfare Fund reimbursed the provider the remaining cost of the services. See id. Montefiore was an "in-network" provider by virtue of its membership in two preferred provider organizations which had agreements with the Welfare Fund regarding reimbursement rates for health care services. Id. at 326. Montefiore sued the Welfare Fund in state court, alleging that the Welfare Fund had breached agreements by failing to reimburse the provider for services Montefiore provided to the Welfare Fund's beneficiaries. Id. The Welfare Fund removed the case, asserting ERISA pre-emption. Id. Montefiore argued that the

7

case should be remanded because the disputed issue was the amount the Welfare Fund was required to pay Montefiore pursuant to contractual obligations. Id. at 331. The Second Circuit cited with approval

> a common distinction in the case law between claims involving the 'right to payment' and claims involving the 'amount of payment'–that is, on the one hand, claims that implicate coverage and benefits established by the terms of the ERISA benefit plan[,] [which are preempted], and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments[,] [which are not].

Id. However, the Court noted that the claims for reimbursement that the parties submitted "appear[ed] to implicate coverage determinations under the relevant terms" of the employee benefit plan. Id. Indeed, "[n]one of the selected claims appear[ed] to be claims regarding, for example, underpayment or untimely payment, where the basic right to payment ha[d] already been established and the remaining dispute only involve[d] obligations derived from a source other than" the employee benefit plan. Id. Therefore, the claims were "colorable claims for benefits pursuant to § 502(a)(1)(B). Id. at 332. Montefiore thus teaches that a dispute is a colorable claim for benefits under ERISA when its resolution depends on an interpretation of the terms of an ERISA-governed employee benefit plan; that is, when, in order to determine whether the plaintiff is entitled to relief, the court must look to the terms of employee benefit plan, itself.

Here, plaintiffs claim that they are entitled to family medical coverage without paying a premium. (Complaint ¶ 11). They are allegedly entitled to this medical coverage because it was promised to them in the 1994 settlement agreement against BFG, defendants' predecessor. (Id.).

Thus, this is not a case in which plaintiffs seek benefits under the Plan, or seek to clarify or enforce any rights under the Plan. Rather, plaintiffs assert that, notwithstanding what the Plan states, they are entitled to family medical coverage without being required to pay a premium solely pursuant to a separate court-ordered settlement of a personal injury action. A similar situation was presented in Marin General Hospital, in which a hospital brought an action against an ERISA plan administrator based on the administrator's alleged oral promise to pay for 90% of a beneficiary's medical expenses for an authorized treatment. See Marin Gen. Hosp., 581 F.3d at 943-44, cited with approval in Montefiore, 642 F.3d at 328. The Ninth Circuit held that the claims could not have been brought under § 502(a)(1)(B); instead, the claims arose solely out of the alleged promise to pay 90% of the patient's hospital charges. Marin Gen. Hosp., 581 F.3d at 947, 949. The court noted that the plaintiff did not contend it was owed the amount under the ERISA plan; it "claim[ed] this amount precisely because it [wa]s not owed under the ERISA plan," but rather under the "alleged oral contract" with the plan administrator. Id. at 947.

Defendants emphasize that plaintiffs were eligible to participate in the Plan and that they exhausted their administrative remedies under the Plan by contesting the contributions that plaintiffs were assessed before the Plan administrator, the Michelin Pension and Benefits Board. (Defendants' Response at 6). Defendants fail to mention that plaintiffs argued before the Plan administrator that they were entitled to coverage without paying a premium because of the 1994 settlement. (See Stuart Cert., Exh. A at 10 ("[A]lthough the 1994 court document did state that the family medical plan would be continued, it did not state that the same plan and the same premium would be continued for life.")). To the extent that defendants are attempting to argue that, by attempting to resolve this matter through the Plan's appeals process, plaintiffs somehow conceded that their claim actually

9

arises under ERISA, defendants have cited no legal support for this proposition, nor can the Court find any.

>    2. Plaintiffs' Breach of Contract Claim Seeks to Enforce an Independent Legal Duty Owed by Defendants

The second prong of the Davila test asks whether the action was brought "under circumstances in which 'there is no other independent legal duty that is implicated by a defendant's actions.'" Montefiore, 642 F.3d at 328 (quoting Davila, 542 U.S. at 210). As should be clear from the discussion above, plaintiffs claim that defendants had a legal duty arising from the 1994 settlement agreement to provide family medical coverage to them without requiring payment of a premium for as long as plaintiff Patrick Olchovy remained disabled. This duty, if proved, arises "independently of ERISA or the terms of [any] employee benefit plans" Davila, 542 U.S. at 212.

In Cantor v. American Banknote Corp., No. 06 Civ. 1392, 2007 WL 3084966 (S.D.N.Y Oct. 22, 2007), the decedent plaintiff and his employer entered into a settlement agreement providing, in relevant part, that plaintiff would continue to receive life insurance coverage as long as he continued to receive payments pursuant to a severance package. See id. at *1. The agreement was intended to settle outstanding claims and to induce the plaintiff to leave full-time employment with the employer, who had filed for bankruptcy protection. See id. at *1, *6. The plaintiff subsequently learned that, contrary to the agreement, his life insurance coverage was prematurely terminated and could not be reinstated. Id. The plaintiff sued for, among other things, breach of the settlement agreement. See id. at *1, *6. The court held that the breach of contract claim was not pre-empted by ERISA, because it did not arise exclusively from ERISA or the terms of a plan governed by the

10

statute:

> [T]he 2001 Agreement contractually obligated [the employer] to provide [the plaintiff] the same benfits post-agreement that he had previously received, both in consideration for settlement of outstanding claims and as an inducement for him to leave full-time employment . . . . [The plaintiff's] entitlement to the benefit does not, therefore, 'derive[] entirely from the particular rights and obligations established by the benefit plans,' but rather from the 2001 Agreement. That the method selected for providing those benefits was modification of an existing ERISA plan does not alter the independent nature of the obligation.

Id. at *6; see also Cotter v. Milly LLC, No. 09 Civ. 04639, 2010 WL 286614, at *7 (S.D.N.Y. Jan. 22, 2010) (holding that claims that an employer breached an employment contract by failing to make an employee a profit-sharing payment pursuant to a 401(k) plan and failing to match contributions pursuant to that same plan were not preempted by ERISA because the claims were based on compensation promised to the plaintiff to induce him to accept an offer of employment).

The court in Kelly v. Deutsche Bank Securities Corp., No. 09-CV-5378, 2010 WL 2292388 (E.D.N.Y. June 3, 2010), traces the decision in Cantor to the fact that the defendant against whom the breach of contract claim was directed was no longer the administrator of the ERISA-governed plan, and therefore "owed no liability under ERISA." Id. at *2. Although the Cantor court mentions this fact, it was not a dispositive factor in the decision; rather, the dispositive factor was that the duty arose from an independent agreement:

> ABN's potential liability does not exist only because of its administration of the Hartford Plan, but because of the 2001

11

> Agreement. Indeed, it is [co-defendant] ABNCo and not ABN that administers the Hartford Plan. Similarly, Plaintiff does not bring suit 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans,' but explicitly acknowledges that the denial of benefits was proper. <u>It is the breach of ABN's independent contractual obligation, rather than the denial of benefits, that Plaintiff seeks to remedy, and therefore Plaintiff's breach of contract claim is not pre-empted</u>.

<u>Cantor</u>, 2007 WL 3084966, at *6 (emphasis added). So it is here. The obligation claimed arises from the 1994 settlement agreement, and not from the rights and benefits established by the benefit plans.

Defendants argue that the transcript memorializing the settlement agreement does not "even mention that Plaintiffs would receive family medical coverage without having to contribute to the cost of the coverage." (Defendants' Response at 8; <u>see also</u> Defendants' Reply in Support of Their Response at 2. Plaintiffs claim that the 1994 settlement agreement assured them continuing existing medical coverage during continuing disability without requiring payment of premiums, which seems a plausible reading of the transcript. The merits of the contract action may require that the court consider extraneous evidence, since the provision at issue may be ambiguous on its face. This, however, goes to the merits of the breach of contract claim rather than to the issue of whether the 1994 settlement agreement created obligations independent of ERISA or the terms of an ERISA-governed plan.

### RECOMMENDATION

Defendants have not met their burden of establishing that plaintiffs' claim is pre-empted by

ERISA and that removal was proper. For the foregoing reasons, I recommend that this case be remanded to Suffolk County Supreme Court.

OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Failure to file objections within fourteen (14) days will preclude further appellate review. Thomas v. Arn, 474 U.S. 140, 145 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated: Central Islip, New York
September __, 2011

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge